## EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* STOUGH.

[No. 6,819. Filed November 5, 1909. Rehearing denied January 26, 1910. Transfer denied February 24, 1910.]

1. INSURANCE.—*Beneficiaries.—Vested Rights.*—A policy giving to the assured the right to change his beneficiary does not give such beneficiary a vested right. p. 414.

2. INSURANCE.—*Policies.—Mutual Abrogation.*—A policy giving no vested right to the beneficiary may be abrogated by the mutual consent of assured and the company. p. 414.

3. INSURANCE.—*Contract.—Policy.—Notes.*—The policy and the premium notes constitute the contract between the company and assured. p. 414.

4. INSURANCE.— *Policy.— Cancelation.*— Where assured delivered up his policy to the company's local agent and obtained his premium note, his policy ceases to be binding, although the company, at its home office, without knowledge of the facts, has issued a short rate premium for the time the policy was outstanding. p. 415.

5. INSURANCE.—*Policy.—Notes.—Estoppel.*—Where a policy is surrendered and the premium note canceled no action can be supported on the policy, and the company is estopped to maintain an action on the note. p. 415.

From Marion Circuit Court (15,192) ; *Henry Clay Allen*, Judge.

Action by Matilda Stough against the Equitable Life Assurance Society of the United States. From a judgment for plaintiff, defendant appeals. *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam;* for appellant.

*M. M. Bachelder,* for appellee.

COMSTOCK, J.—Appellee sued appellant on an insurance policy issued on the life of William E. Stough, in which appellee, his mother, was named as beneficiary. Issues were formed on the one paragraph of complaint by general denial. Trial was had by jury, verdict returned in favor of appellee for $———, and over appellant's motion for a new trial judgment was rendered thereon.

The action of the court in overruling the motion for a new trial is the only error assigned. As grounds therefor it is claimed that the verdict is not sustained by sufficient evidence, is contrary to law, and that the court erred in giving and in refusing to give to the jury certain instructions.

The following facts, as shown by the evidence, are uncontradicted. Louis B. Noble, a local agent for Elkhart county, Indiana, of the Equitable Life Assurance Society, working under the direction of William B. Paul, in May, 1904, sold a policy of life insurance to William E. Stough. The premium for said policy was $31.31, and was paid at the time of the delivery of the policy, on or about May 14, 1904, $6.31 in cash and a note given to and payable to said Noble for balance of $25, payable sixty days after date, May 10, 1904. Said policy was issued by said company and sent to William B. Paul, its general agent, and by Paul was sent to Noble and by Noble delivered to Stough. Paul was connected with the company from June, 1904, to the latter part of the year 1905. Noble wrote business for the company. His contract was with William B. Paul, and was in force May 12, 1904. Paul paid the company all that it was entitled to of the premium from said Stough on said policy. Stough made no other payment than the $6.31 on said policy. After the death of the insured, Paul received from the company $7 or $8. The company retained a medical fee of $5,

and a term rate on the policy up to the time it was canceled. Noble kept the note during the sixty-day limit allowed for the return of the policy, and after several attempts to collect it told Stough that he had to return the policy before the sixty-day limit was out, which would be about the middle of July. Stough said that he could not make the payment, that he had been disappointed in some help that he had expected, and that he would have to give up the policy. It was agreed between Noble and Stough that the said sum of $6.31 should be kept by Noble as reimbursement for medical fees and other expenses. Stough gave the policy to Noble at least two or three days before the time was out for him to return it. Noble delivered the note to Stough the same day the policy was returned. When the policy was returned to Noble, he wrote across the face of the note, words to this effect: "This note is returned because the policy was not taken out." On August 15, Stough became sick with small-pox, and died after an illness of five days. At the time of his death the note was in the possession of Stough, and across the face of it was written: "This note was given for life insurance which was returned, N. T. O. Therefore the note was returned." The letters "N. T. O." meant not taken out.

In addition to the foregoing undisputed facts, there was evidence, not wholly without contradiction, that Paul paid the company $15.65 which he received from Noble about August 1, 1905; that he paid for this policy about July 19, 1904, and charged it to Noble's account, and he told Noble that this Stough policy must be paid for or returned; that afterwards, in August, 1904, he received the policy in a letter from Noble. Paul testified that he had mislaid the letter; that it was his opinion that the letter stated that Stough was dead or about to die, and the policy had better be canceled; that he forwarded the policy to William T. Tasker, cashier of appellant society for the State of Indiana, and received from the company $7 or $8. There is evidence that the

policy was not received at the home office until after the death of the insured. Noble testified that he mailed the policy to Paul the day after he received it.

The complaint alleges that at the time of the death of decedent the policy was in force and in his possession, and that at about that time the defendant, unlawfully, wrongfully and without the knowledge or consent of the decedent, took the policy from his possession and deprived him of the use thereof.

There is no evidence in support of these allegations. The question is not whether the local agent had authority to cancel the policy. The insured had the right, under 1. the terms of the policy, to change the beneficiary. The beneficiary therefore had no vested right. *Denver Life Ins. Co.* v. *Crane* (1903), 19 Colo. App. 191, 73 Pac. 875; *Milne* v. *Northwestern Life Assur. Co.* (1898), 23 Misc. (N. Y.) 553, 52 N. Y. Supp. 766. The insured had complete control of the policy.

A policy may be surrendered by mutual agreement so as to terminate the rights and obligations of the parties. *Ohio Farmers Ins. Co.* v. *Hunter* (1906), 38 Ind. App. 11; 2. *Mutual Life Ins. Co.* v. *Phinney* (1900), 178 U. S. 327, 20 Sup. Ct. 906, 44 L. Ed. 1088; *Mutual Life Ins. Co.* v. *Sears* (1900), 178 U. S. 345, 20 Sup. Ct. 912, 44 L. Ed. 1096; *Mutual Life Ins. Co.* v. *Hill* (1900), 178 U. S. 347, 20 Sup. Ct. 914, 44 L. Ed. 1097; *Mutual Life Ins. Co.* v. *Allen* (1900), 178 U. S. 351, 20 Sup. Ct. 913, 44 L. Ed. 1098; *Mosser* v. *Knights Templars, etc., Co.* (1898), 115 Mich. 672, 74 N. W. 230; *Van Wert* v. *St. Paul Fire Ins. Co.* (1896), 8 App. Div. 107, 40 N. Y. Supp. 463.

The evidence shows, without contradiction, that Stough voluntarily rescinded his contract of insurance and surrendered his policy. This he had the right and was 3. competent to do. The policy of insurance and the premium note given therefor constituted the contract between the insurance company and the insured. They had

the same power to rescind it by mutual agreement as they had to make it. *Akers* v. *Hile* (1880), 94 Pa. St. 394, 39 Am. Rep. 792; *German Ins. Co.* v. *Davis* (1889), (Ark.), 12 S. W. 155. The fact, that the company at the home office at New York charged the general agent, under whom the policy was issued, a short rate premium for the time the policy was outstanding, without knowledge of all the facts, would not change the situation in any respect. It cannot successfully be contended that, after the note was surrendered and canceled, and the insured had delivered the policy to the agent from whom he obtained it, Stough could have been successfully sued upon the note. And, by parity of reasoning, the representative of the insured would be estopped to deny that he intended to do just what he did, and that he dealt with the agent as one having full authority, and that he fully intended to surrender his policy. The verdict is not sustained by the evidence. Other alleged errors need not be considered.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.