#### SULLIVAN v. EMPLOYERS' FIRE INSURANCE CO.

No. 74-406-CA.

Circuit Court, St. Lucie County.

September 6, 1974.

Michael Jeffries of Neill, Griffin, Jeffries & Lloyd, Fort Pierce, for the plaintiff.

Mark Hicks of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for the defendant.

JAMES E. ALDERMAN, Circuit Judge.

*Declaratory judgment:* The plaintiff, John B. Sullivan, M. D., seeks a declaratory judgment against the defendant, the Employers' Fire Insurance Company, to determine the respective rights and liabilities of the parties under the terms of a professional liability insurance policy written by the defendant in favor of the plaintiff.

Both parties have filed motions for summary judgment and agree that there is no genuine issue of fact. The undisputed facts in this case are as follows — the Employers' Fire Insurance Company originally issued a professional liability policy for Florida physicians and surgeons to John B. Sullivan, M. D., being policy No. F 86-2684-74. The term of the original policy was from January 1, 1969, to January 1, 1970. This policy was subsequently extended to cover the period to and including January 1, 1972. On December 22, 1971, the plaintiff received a letter from an agent of the defendant, advising him that the insurance policy then in existence would not be renewed on its expiration date of January 1, 1972. On December 30, 1971, the plaintiff, through his attorney, requested that the existing malpractice coverage be extended. On January 19, 1972, the plaintiff was advised by letter from the defendant's agent that his professional liability coverage would be extended through January 31, 1972. On May 23, 1972, the defendant through its agent forwarded to the plaintiff an endorsement dated May 16, 1972. This endorsement, in consideration of an additional premium of $199, extended the policy from January 1, 1972, to January 31, 1972. The endorsement specifically provided that "the extension of coverage hereunder afforded shall be null and void unless the premium charged shall be paid within 30 days from the date this endorsement was issued." With the endorsement, the defendant enclosed its invoice in the amount of $199 and requested payment. The cover letter specifically stated "Please note the wording of the

endorsement as issued by the Insurance Company that the premium must be paid within 30 days from the date endorsement was issued, which was May 16, 1972, or else the coverage shall become null and void." The plaintiff did not and has never remitted the $199 premium to the defendant.

On August 28, 1972, the defendant's agent wrote to the plaintiff, enclosing a second endorsement to the policy, declaring — "In consideration of the above return premium it is agreed that endorsement No. 1 is null and void and all coverage hereunder ceases effective at 12:01 A.M., January 1, 1972." In the covering letter defendant's agent stated, "Since this premium was not received, the coverage ceases as of January 1, 1972, in accordance with the terms of the endorsement . . . Please remember that therefore the coverage ceased to be in force as of 12:01 A.M., January 1, 1972."

Thereafter, there was no further communication between the plaintiff and the defendant until February of 1974. On or about the 20th of that month, the plaintiff was sued in a civil action alleging medical malpractice on his part during the month of January 1972. Shortly thereafter, plaintiff's attorney contacted the defendant requesting that it assume the defense of this malpracice suit against Dr. Sullivan. Defendant's agent, by letter dated March 8, 1974, to plaintiff's attorney, declined to accept this defense upon the ground that Dr. Sullivan had no professional liability insurance coverage with the defendant to cover this incident which occurred in the month of January 1972. This suit for declaratory judgment was thereafter filed by Dr. Sullivan against the Employers' Fire Insurance Company.

The plaintiff contends that he is entitled to coverage in spite of his nonpayment of premium upon the following theories — First, he argues that once the insurance company assumed the risk, the insured became liable for the premium and since an action could be maintained against the insured for the unpaid premium, the insurance company's remedy for the unpaid premium is an action for debt or a set off. Alternatively, plaintiff argues that a loss while the policy is in force matured his rights under the policy. He contends that when the alleged malpractice occurred in January of 1972, the policy was in force and therefore the liability of the defendant was fixed at that point and the subsequent nonpayment of the premium could not have caused a forfeiture of the coverage.

On the other hand, the defendant contends that where an insurance policy or endorsement expressly provides that the coverage afforded shall be null and void upon the nonpayment of a premium, the provision is valid and vitiates coverage upon the insured's failure to pay the premium as required.

If the endorsement extending coverage an additional 30 days had not contained the specific provision that "the extension of coverage hereunder afforded shall be null and void unless the premium charged shall be paid within 30 days from the date this endorsement was issued," the court would be inclined to accept the plaintiff's arguments. However, the particular provision of the endorsement referred to above factually distinguishes this case from the various authorities cited by the plaintiff in support of his position.

The legal issue upon which this case must be decided is whether or not the express provision of the endorsement to the effect that the extended coverage offered shall be null and void upon the non-payment of premium, is valid and enforceable.

Although there appear to be no Florida appellate decisions on this point directly dealing with professional liability insurance, the rule has been recognized in Florida that an insurance policy may validly stipulate that nonpayment of premium when due will effect a forfeiture. 18 Fla. Jur., *Insurance* §548. See also American Automobile Insurance Association v. Folsom, 161 So. 434 (1935) (collision insurance); Boring v. Kentucky Home Mutual Life Insurance Company 7 So.2d 587 (1942) (life insurance); Curry v. Security Life and Trust Company, 187 So.2d 906 (1966) (mortgage life insurance); and Couch v. Kentucky General Life Insurance Company, 216 So.2d 72 (1968) (group health and accident insurance). This also appears to be the general rule in the United States. Professor Couch in his treatise on insurance states —

> It is generally agreed that conditions in policies as to forfeiture for nonpayment of premiums, at or within a specified time, are valid and enforceable in the absence of statutory provisions to the contrary, or except as limited by statute. And the time fixed for payment is binding, in the absence of fraud or mistake, or unless waived, or unless the insurer is estopped. *Couch on Insurance 2d,* §32:57

> Where the policy makes clear and unambiguous provision for a forfeiture upon nonpayment of premiums, the court must enforce such forfeiture, for neither the principle of strict construction against the insurer, nor the rule for the avoidance of forfeitures, will warrant the court's rewriting the contract of the parties where they have expressly provided for a forfeiture. Similarly, the courts are not to take clear provisions calling for forfeiture and give them an unreasonable interpretation, thus depriving insurers of substantial rights inuring to them under the law and their contracts. If an unqualified provision for forfeiture upon default is clear and unambiguous, the court has no power to vary the stipulation, although payment may have been prevented by poverty, illness, mental impairment, or accident. *Couch on Insurance 2d,* 32:58

If a policy of insurance provides that the premium shall be paid on or before a stipulated day or the policy shall become forfeited and void or the insurer shall be released from all liability, time becomes of the very essence of the contract, and a failure to pay as agreed terminates the contract unless there is an attempted payment or a waiver or estoppel, and subject also to such exceptions or qualifications as may exist by reason of contract provision, or of statutes requiring notice, and of nonforfeiture and similar enactments. In case the premium is not paid when due, in consequence of which a forfeiture is incurred under the conditions of the contract, equity cannot grant relief, for where an automatic forfeiture provision is clear and unambiguous it must be enforced according to its terms. *Couch on Insurance 2d,* §32:65

In this case the unqualified provision for termination of the extended coverage upon nonpayment of the premium is clear and unambiguous. From the undisputed facts it appears there was no fraud or mistake on the part of the parties, there is no showing of a waiver by the insurance company, or anything which in equity would raise an estoppel. It appears that Dr. Sullivan had full knowledge of the condition under which the extended coverage was offered and for some reason elected not to pay the premium, thereby allowing the extended coverage to become null and void.

It is thereupon ordered and adjudged that the motion for summary judgment filed by the defendant, the Employers' Fire Insurance Company, is granted, and summary final judgment be and the same is hereby entered in favor of the defendant, the Employers' Fire Insurance Company, and against the plaintiff, John B. Sullivan, M.D.